IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: COVENTRY HEALTH CARE, INC. ERISA LITIGATION | MASTER FILE: 8:09-CV-02661 (AW) |
| THIS DOCUMENT RELATES TO: | Judge Alexander Williams, Jr. |
| ERISA ACTION | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT,
PRELIMINARY APPROVAL OF SETTLEMENT AND PROPOSED PLAN OF
ALLOCATION, APPROVAL OF FORM AND MANNER OF NOTICE
AND REQUEST FOR SETTLEMENT FAIRNESS HEARING**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................ 1

II.   STATEMENT OF FACTS ................................................................ 3

      A. Facts ........................................................................... 3

      B. Nature and State of Proceedings ........................................... 7

      C. The Proposed Class ........................................................... 8

      D. The Proposed Class Representatives ...................................... 9

      E. The Proposed Settlement .................................................... 9

III.  ARGUMENT ............................................................................. 9

      A. The Class Satisfies The Requirements Of Rule 23 And Should Be
         Certified To Effectuate The Settlement ................................... 9

           1.  The Proposed Class Satisfies the Requirement of Rule
               23(a) .................................................................. 10

                (a)    Numerosity ............................................... 10

                (b)    Commonality ............................................. 10

                (c)    Typicality ................................................. 11

                (d)    Adequacy ................................................. 11

           2.  The Proposed Settlement Class Satisfies the Requirements
               of Rule 23(b)(1) .................................................... 12

      B. The Proposed Settlement Should Be Primarily Approved ............... 13

           1.  The Settlement is Fair ............................................. 15

           2.  The Experience of Counsel is Demonstrated .................... 16

           3.  The Settlement is Adequate ....................................... 16

i

(a) Reasons for the Settlement ................................. 16

(b) Potential Difficulties of Proof or Strong Defenses ....... 18

(c) Anticipated Duration and Expense of Continued Litigation .................................................... 20

C. The Proposed Form Of Notice And Notice Plan Will Provide The Best Notice Practicable Under The Circumstances ............................... 21

D. The Proposed Plan Of Allocation Is Reasonable And Should Be Given Preliminary Approval ........................................................ 22

E. It Is Appropriate To Schedule A Settlement Fairness Hearing ............... 24

IV.  CONCLUSION ................................................................... 24

#2064772v.1

## TABLE OF AUTHORITIES

### Cases

*Bowling v. Pfizer, Inc.*
    143 F.R.D. 141 (S.D. Ohio 1992) ……………………….…………….. 20

*Broussard v. Meineke Discount Muffler Shops, Inc.*
    155 F.3d 331 (4th Cir. 1998)…………………………………………. 11

*Bussie v. Allmerica Financial Corp.*
    50 F. Supp. 2d 59 (D. Mass. 1999) ………………………………….. 18

*Deiter v. Microsoft Corp.*
    436 F.3d 461 (4th Cir. 2006)…………………………………………. 11

*DiFelice* v. *U.S. Airways, Inc.*
    235 F.R.D. 70 (E.D. Va. 2006) ……………………..…………………. 12

*Falcon v. Gen. Tel. Co.*
    626 F.2d 369 (5th Cir.1980) …………………………………………. 12

*Flinn v. FMC Corp.*
    528 F.2d 1169 (4th Cir. 1975) ………………………………………. 14

*Gen. Tel. Co. of the Sw. v. Falcon*
    457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)……………………. 11

*Gunnells v. Healthplan Servs.*
    348 F 3d 417 (4th Cir. 2003) ………………………..…………………. 10

*Henley v. FMC Corp.*
    207 F. Supp. 2d 489 (S.D. W.Va. 2002) ………..….………………….. 14, 16

*Horton* v. *Merrill Lynch, Pierce, Fenner & Smith*
    855 F. Supp. 825 (E.D.N.C. 1994) …..…………………………….... 3

*In re Alger, Columbia, Janus, MFS, One Group, Allianz Dresdner and Putnam*
    No. 04–MD–15863–05, 2010 WL 2104607 (D. Md. May 19, 2009) ………. 23

*In re AOL Time Warner ERISA Litig.*
    No. 02-8853, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) …………....…. 23

*In re Broadwing*
    252 F.R.D. 369 (S.D. Ohio 2006) ……………….…………………….. 19

iii

*In re Domestic Air Transport Antitrust Litig.*
   141 F.R.D. 534 (N.D. Ga. 1992) ………...…………………………….. 21

*In re Mid-Atlanic Toyota Antitrust Litig.*
   564 F. Supp. 1379 (D. Md. 1983) ………...…………………………….. 13

*In re PaineWebber Ltd. P'ships Litig.*
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)……….. 22

*In re Jiffy Lube Sec. Litig.*
   927 F.2d 155 (4th Cir. 1991) …………………………………………... 14

*In re Montgomery County Real Estate Antitrust Litig.*
   83 F.R.D. 305 (D. Md. 1979)………...…………………………………… 14

*In re Sprint Corp. ERISA Litig.*
   443 F. Supp. 2d 1249 (D. Kan. 2006) ………...………………………… 23

*In re The Mills Corp. Sec. Litig.*
   265 F.R.D. 246 (E.D. Va. 2009) ………...……………………………… 22

*In re U.S. Financial Sec. Litig.*
   69 F.R.D. 24 (S.D. Cal. 1975) ………...………………………………... 21

*In re Worldcom, Inc. ERISA Litig.,*
   No. 02 Civ. 4816 (DLC), 2004 WL 2338151
   (S.D.N.Y. Oct. 18, 2004) ………………………………………………… 23

*Kelley v. Norfolk & W. Ry. Co.*
   584 F.2d 34 (4th Cir. 1978) ..……………………………………………... 10

*Kogan v. AIMCO Fox Chase, L.P.*
   193 F.R.D. 496 (E.D. Mich. 2000) …………………………………….. 20

*Payne v. Goodyear Tire & Rubber Co.*
   216 F.R.D. 21 (D. Mass. 2003) ………………………………………… 10

*Peoples v. Wendover Funding*
   179 F .R.D. 492 (D. Md. 1998) ………………………………………... 12

*Schwartz v. Dallas Cowboys Football Club, Ltd.*
   157 F. Supp. 2d 561 (E.D. Pa. 2001) ………………………………….... 3

*South Carolina Nat 'l Bank v. Stone*
   139 F.R.D. 335 (D. S.C. 1991) ………………………………………… 9

iv

*Walsh* v. *Great Atl. & Pac. Tea Co.*
    726 F.2d 956 (3d Cir. 1983) ……………………………………………… 22

*White* v. *NFL*
    822 F. Supp. 1389 (D. Minn. 1993) …………..……………………………... 22

## **Other Material**

*Manual for Complex Litigation* § 30.41 (3d ed. 1995) ……………………………… 13

#2064772v.1

Plaintiffs Loretta Boyd, Christopher Sawney, Karen A. Milner, Jack J. Nelson and Karen Billig ("Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Certification of Class for Purposes of Settlement, Preliminary Approval of Settlement and Proposed Plan of Allocation, Approval of Form and Manner of Notice, and Request for Settlement Fairness Hearing (the "Motion"). Pursuant to this Motion, Plaintiffs seek entry of an Order: (i) preliminarily certifying the proposed Class for purposes of settlement; (ii) preliminarily approving the settlement of the above-captioned consolidated action ("ERISA Action") and the proposed plan of allocation; (iii) approving the form and manner of notice; and (iv) scheduling a hearing on fairness of settlement, under Fed. R. Civ. P. 23(e). A copy of the proposed "Preliminary Approval Order" is submitted concurrently herewith.

## I.   PRELIMINARY STATEMENT

Plaintiffs seek the Court's preliminary approval of a proposed settlement (the "Settlement") on behalf of themselves, the Coventry Health Care, Inc. Retirement Savings Plan (the "Plan"), and all other persons similarly situated as Plan participants and beneficiaries (the "Participants") who held the Coventry Stock Fund (the "Fund') in their Plan accounts during the period from February 9, 2007 through October 28, 2008, (the "Class Period"). The Settlement follows nearly four years of intensive litigation, and is the culmination of good faith, arm's-length negotiations between experienced counsel. The case was settled following an all-day mediation before Chief Magistrate Judge William Connelly after an earlier mediation before a private mediator failed to produce a settlement.

The Settlement, set forth in the Stipulation of Settlement dated as of September 19, 2013 (the "Agreement") (submitted herewith as Exhibit 1), strikes an appropriate balance between the merits of the Class's (defined below) claims, and the expense and inconvenience that the parties

1

would incur by bringing this case to trial.  In accordance with the Agreement, Defendants[1] shall pay $3,600,000 in cash to the Class (the "Settlement Fund").  Plaintiffs respectfully submit that the Settlement is an outstanding recovery for the Class, and is fair, reasonable, adequate, and worthy of preliminary approval.

Before preliminarily approving the Settlement on behalf of the Class, the Court must first determine that the Class proposed for settlement purposes here satisfies the requirements of Rule 23(a) and Rule 23(b)(1) of the Federal Rules of Civil Procedure.  As set forth below, the proposed Class satisfies these requirements.  Accordingly, Plaintiffs respectfully request that the Court certify the proposed Class and appoint the proposed Class Representatives for purposes of effectuating the Settlement.  Defendants consent to the certification of the Class for settlement purposes.

The proposed Settlement was reached after almost four years of hard-fought litigation and negotiation, including a full briefing and decision on Defendants' motion to dismiss, Defendants' motion to reconsider, Plaintiffs' motion to compel discovery, and vigorous arm's-length settlement discussions at two different mediations, while discovery was on-going.  Based on an evaluation of the facts, the governing law and the recognition of the substantial risks of continued litigation, Plaintiffs and Plaintiffs' Interim Co-Lead Counsel submit that the proposed Settlement is in the best interests of the proposed Class by providing a meaningful recovery now. Moreover, the proposed notice, advising class members of the Settlement, satisfies the

---

[1]    Defendants are fiduciaries of the Plan within the meaning of ERISA (defined below).  They include: (A) Corporate Defendant – Coventry; (B) Coventry Director Defendants – Defendants Dale B. Wolf, Daniel N. Mendelson, Rodman W. Moorhead, III, Timothy T. Weglicki, L. Dale Crandall, Elizabeth E. Tallett, Allen F. Wise, Joel Ackerman and Lawrence N. Kugelman; (C) Coventry Officer Defendants – Defendants Shawn M. Guertin and Patrisha Davis; (D) Defendant Coventry 401(k) Plan Investment Committee and its members – Defendants Harvey C. DeMovick, James E. McGarry, Allen H. Spath, David A. Finkel, Maria Z. Fitzpatrick and Richard A. Bates.

2

requirements of due process, and is consistent with the form of notice used in analogous actions. Based on the foregoing and as further detailed herein, Plaintiffs respectfully request that their motion for preliminary approval be granted.   This motion is unopposed.

To preliminarily approve the Settlement, the Court must find that the proposed Settlement falls "'within the range of possible approval.'" *Horton* v. *Merrill Lynch, Pierce, Fenner & Smith.* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citation omitted).   This determination does not require the Court to reach the merits of the dispute.   Moreover, where a proposed resolution has been negotiated by experienced counsel—as is the case with the Settlement here—it is presumptively fair for purposes of preliminary approval. *Schwartz* v. *Dallas Cowboys Football Club, Ltd,* 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001).   As described below, this standard is satisfied.   The $3.6 million Settlement Fund represents an outstanding benefit to the Class.

Finally, Plaintiffs and Defendants respectfully request that the Court schedule a hearing (the "Settlement Fairness Hearing") to determine whether to grant final approval to the Settlement and the proposed Plan of Allocation (attached as Exhibit D to the Agreement), and whether to grant Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, and a case contribution award to the named Plaintiffs for their services to the Class. At the Settlement Fairness Hearing, Plaintiffs and Defendants will seek the Court's entry of the Order and Final Judgment (attached as Exhibit C to the Agreement).

## II.    STATEMENT OF FACTS

### A.    Facts

The first action brought under the Employee Retirement Income Security Act ("ERISA") against Defendants was filed on October 13, 2009 by plaintiffs Boyd and Sawney.   Later filed

3

cases were consolidated together, and a Consolidated Complaint ("Complaint") was filed on June 28, 2010 (Dkt. No. 17). The Complaint[2] alleges that Defendants (fiduciaries of the Plan), failed to prudently and loyally manage the assets of the Plan as required by ERISA. Plaintiffs alleged that the Plan's fiduciaries ignored the fact that the common stock of Coventry Health Care, Inc. ("Coventry" or the "Company") had become an imprudent investment for the Plan and its Participants during the Class Period. Plaintiffs alleged Defendants breached their statutory fiduciary duties by continuing to offer Coventry stock as a Plan investment option and by continuing to invest Plan assets in this stock through the Fund. Plaintiffs also assert that certain Defendants violated their alleged fiduciary duties by failing to provide Participants with complete and accurate information about the Fund and Coventry. As a result of Defendants' alleged breaches, Participants lost millions of dollars of their hard-earned retirement savings— for which ERISA holds Defendants personally responsible.

Coventry, headquartered in Bethesda, Maryland, is a national managed health care company. ¶¶ 16, 90. At issue in this case is Coventry's Medicare Advantage Private-Fee-For Service ("PFFS"). Medicare Advantage plans allow participants to receive Medicare benefits from private companies, and typically offer additional benefits. ¶ 92. PFFS, introduced by Coventry at the start of 2007, is a type of Medicare Advantage health plan in which members do not have to utilize a specific network of providers. ¶ 95.

Coventry's inability to timely and accurately process its PFFS claims caused the Company to materially understate its true claims exposure. Such understatement in turn overstated the profitability of PFFS, distorting Coventry's financial results. ¶¶ 166, 172. Specifically, Coventry materially understated its PFFS claims reserves, including its incurred but

---

[2]     References to the Complaint (Dkt. No. 17) are designated as "¶ _____."

not reported ("IBNR") reserve.  ¶¶ 166, 172, 206.  Since healthcare companies frequently pay medical claims after the end of a particular accounting period, they are required to establish a reserve for claims that have been incurred by the company, but which remain unreported by policyholders or unpaid at the end of the accounting period.  Determining the appropriate level of reserves is heavily dependent upon accurately estimating the number of claims a company will receive in a given quarter.  As a result of Coventry's deficient internal controls over its PFFS claims processing, Coventry failed to timely and accurately process, quantify and record the PFFS claims throughout the Class Period, which caused the Company to underestimate its PFFS claim liabilities, and consequently to under-reserve for IBNR claims expenses.  ¶¶ 108, 166, 172, 206.

Coventry's inaccurate measuring and reserving for its PFFS claims expenses also distorted its medical loss ratio ("MLR"), which represents the ratio of expenses of providing healthcare services, expressed as a percentage of insurance premiums.  ¶¶ 100, 116, 122, 134, 146, 154, 157, 158, 166, 172, 206.  MLR is a significant and closely watched financial indicator of healthcare companies, since a low MLR means that a lower fraction of revenues are spent paying healthcare claims, translating into greater profits.  ¶ 100.  In short, the MLR for the Company's PFFS business was much higher than Coventry was reporting to investors (including Participants), meaning that PFFS was significantly less profitable.  ¶¶ 99, 166, 172, 206.

Since Coventry's PFFS reserve calculations were based on incomplete and inaccurate data, the Company's PFFS medical liabilities and expenses, reported in its financial statements during the Class Period, were materially inaccurate, and its operating results and pre-tax earnings were also materially overstated.  ¶¶ 166, 172, 206.  Thus, Coventry's Class Period financial results were artificially inflated, and its financial statements were materially inaccurate and

5

violated Generally Accepted Accounting Principles ("GAAP").  *Id.*  Nonetheless, Defendants misrepresented that Coventry's financial results conformed with GAAP, and certified the effectiveness of the Company's internal controls over its financial reporting.  ¶¶ 115, 118, 121, 131, 133, 140, 145, 149, 153, 165.

On June 18, 2008, the magnitude of Coventry's Medicare Advantage PFFS claims processing lag started to become apparent when Defendant Guertin admitted "we are still paying and receiving claims back in the first quarter of 2007.  So there is movement all the way back through the quarters."  ¶ 159.  In addition, the Company announced a startling $50 million increase in reserves for its PPFS business "related to 2007," and disclosed that Coventry was still processing claims going back as far as the first quarter of 2007.  ¶ 155.  Defendants, however, downplayed the severity of these problems, and misleadingly blamed them on delays in receiving claims from providers, which had purportedly led to a sudden influx of claims during the quarter. ¶ 157.  Moreover, Coventry's MLR for its PFFS business continued to be understated.  ¶ 165.  In response to these partial disclosures, the price of the Company's stock fell by more than 22%, from $40.00 per share to $31.30 per share.  ¶ 160.

Four months later, Coventry's CEO, Defendant Wolf[3], finally acknowledged the dismal state of Coventry's business operations.  On October 21, 2008, after the close of the markets, the Company stunned investors—including Participants—by issuing a press release quoting Defendant Wolf as stating that "[o]ur results for 2008 are unacceptable, and a great disappointment to me and the entire Company."  ¶ 167.  The press release, incorporated in the Company's Form 8-K filing with the SEC, disclosed that Coventry slashed its full year 2008 EPS (earnings per share) guidance for a second time, by an additional 31%, to $2.55 per share.

---

[3]    The Court found that the Complaint sufficiently alleged a misrepresentation claim against Coventry and Defendants Guertin and Wolf.  Doc. No. 46 at 10-12.

Defendants attributed $.39 per share of the revision to another huge spike in Medicare Advantage MLR due to PFFS, which was now expected to be in the low to mid 90%'s for the second half of 2008. *Id.* Defendants further revealed that the true MLR for Coventry's PFFS plans was as high as the "mid to upper 90s"—meaning that these plans were barely profitable. ¶ 168. This time, Defendants attributed the increased PFFS MLR to higher claims expenses. These disclosures revealed that Coventry had not resolved the problems with its PFFS business, and PFFS would continue to be more costly and less profitable for the Company, such that PFFS would not be able to generate the future growth that Coventry and its investors, including Participants, had been counting on. ¶ 168. This information sent Coventry's stock down an additional 51%, from $28.49 per share to close at $13.93 per share. ¶ 169.

At the start of the Class Period, Coventry's future growth prospects were highly dependent on the success of its PFFS initiative. ¶ 97. Through a combination of under-pricing and aggressive marketing tactics, the Company was able to rapidly grow its new PFFS business. ¶¶ 99, 173. Defendants' Class Period statements touted this growth, portrayed PFFS as a success, and misrepresented to investors, including Participants, that Coventry's PFFS business was more profitable than it actually was. ¶¶ 112-43. All this while, Defendants continued to offer the Fund as a Plan investment option, and permit the Plan assets to be invested in Coventry stock. ¶ 221.

## B.   Nature and Stage of Proceeding

Previously, this Court largely denied Defendants' motion to dismiss in its memorandum opinion issued on March 31, 2011 ("March 31, 2011 Opinion") (Dkt. No. 29), dismissing Plaintiffs' conflict of interests claim, and sustaining the Complaint in all other respects. Defendants moved to reconsider, and on November 18, 2011, the Court issued a memorandum

7

opinion ("November 18, 2011 Opinion") (Dkt. No. 46), dismissing Plaintiffs' duty of prudence and loyalty claim based on misrepresentations/omissions as to certain Defendants and denying Defendants' motion to reconsider as to the remainder of Plaintiffs' claims previously sustained under the March 31, 2011 Order (Counts I, II and IV).  As the facts are set forth in both Opinions, Plaintiffs summarize herein only certain facts that Plaintiffs believe may have particular relevance to the Court's evaluation of this Motion.

In the companion securities action, *In Re Coventry Health Case, Inc. Sec. Litig.*, No. 09-CV-02337-AW (D. Md.), alleging violations of federal securities laws based on similar underlying allegations with regard to Coventry's PFFS business, the Court sustained some of the alleged misstatements complained, of, and narrowed the alleged class period to April 25, 3008 through June 18, 2009.  Here, however, the Court did not disturb the Class Period alleged by Plaintiffs in largely denying Defendants' motion to reconsider.  Following the Court's decision on Defendants' motion to reconsider, Defendants next attempted to circumscribe the scope of Plaintiffs' discovery by refusing to produce documents outside the shorter discoverable time period from the related securities fraud case.  Plaintiffs brought a motion to compel and after full briefing, Magistrate Jillyn K. Schulze rejected all of Defendants' arguments and granted Plaintiffs' motion.  Discovery was currently underway for the full class period, February 9, 2007 to October 22, 2008, when the settlement in principle was reached.

C.    **The Proposed Class**

The Settlement was reached on behalf of a Class defined, as set forth in Paragraph 1 of the Agreement, as a "class consisting of all persons who were participants in or beneficiaries of the Plan and who held Company Stock in their Plan accounts at any time during the Class Period, defined as the time period between February 9, 2007 to October 22, 2008, excluding any and all

8

Defendants and any of Defendants' legal representatives, heirs, predecessors, and assigns (the "Settlement Class")."

### D.     The Proposed Class Representatives

In connection with their request that the Court certify the Class for settlement purposes, Plaintiffs respectfully request that the Court appoint Plaintiffs Boyd, Sawney, Milner, Nelson, and Billig as Class representatives for all purposes.   A description of the proposed Class representatives is set forth in paragraphs 10-12, 14-15 of the Complaint.

### E.     The Proposed Settlement

In accordance with the Agreement, Defendants will make a cash payment of $3.6 million (defined above as the "Settlement Fund"), to be deposited into an escrow account opened for such purpose by Plaintiffs' Interim Co-Lead Counsel, no later than thirty (30) calendar days following the Court's entry of the order preliminarily approving the Settlement, or Defendants' receipt of the payment information (needed to deposit the Settlement Fund into the escrow account), whichever is later.  In turn, the Class will agree to release their claims against Coventry and the other Defendants in this Action, pursuant to the terms stipulated to by the parties in ¶ 9 of the Agreement (entitled "Release"), if the Settlement is granted final approval.

## III.   ARGUMENT

### A.     The Class Satisfies The Requirements Of Rule 23
#### And Should Be Certified To Effectuate The Settlement

Defendants have consented to certification of the Class to effectuate the Settlement.  "The propriety of certifying plaintiff classes for the purposes of implementing settlements is well-recognized."  *South Carolina Nat 'l Bank v. Stone*, 139 F.R.D. 335, 338 (D. S.C. 1991).

#2064772v.1

### 1.   The Proposed Class Satisfies the Requirements of Rule 23(a)

To qualify as a class action under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff must initially satisfy the following four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23(a). *See also Gunnells v. Healthplan Servs.*, 348 F 3d 417, 459 (4th Cir. 2003).

Here, each of the four elements of Rule 23(a) are satisfied.

### (a)   Numerosity

Rule 23(a) permits class treatment where "the class is so numerous that joinder of all members is impracticable." "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied.  The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978).  Here, the proposed Class consists of approximately 18,000 Coventry Plan participants that held company stock in their Plan accounts during the Class Period.

### (b)   Commonality

The proposed Class also satisfies Rule 23(a)(2), which requires "questions of law and fact common to the class."  Actions involving breach of fiduciary duties under ERISA often present common questions of law and fact. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).  Here, there are common questions concerning Defendants' alleged breaches of

10

fiduciary duty under ERISA, the alleged issuance of materially misleading statements and their impact on the price of Coventry stock, predominating over any individual issues of law and fact.

### (c)      Typicality

Plaintiffs' claims are also typical of the claims of the Class, as required by Rule 23(a)(3). Rule 23(a)(3)'s typicality requirement asks whether the representative plaintiffs and putative class members' claims arise from the same practice or course of conduct engaged in by the defendants and whether their claims are based on the same legal theory.   "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotation marks omitted).   The essence of this requirement "is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.' " *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)).   Here, Plaintiffs were employed by Coventry and their claims arise from their holding of Company stock in their respective Plan accounts during the Class Period.   Plaintiffs' claims are identical to the legal claims belonging to all Class members and they would present proof of Coventry's liability on the basis of common facts underlying those claims.

### (d)      Adequacy

Rule 23(a)(4) requires that the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously. "This inquiry involves two issues: (i) whether plaintiffs have any interest antagonistic to the rest of the class, and (ii) whether plaintiffs' counsel are qualified, experienced

11

and generally able to conduct the proposed litigation." *South.Carolina*, 139 F.R.D. at 329–30 (internal quotation marks and citations omitted). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Id.* at 330–31 (citing *Falcon v. Gen. Tel. Co.*, 626 F.2d 369, 376 n. 8 (5th Cir. 1980), vacated on other grounds, 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981)).   Together, these elements require that both counsel and representatives be able to zealously represent and advocate on behalf of the Class as a whole.

Both prongs of the adequacy requirement are met.  Plaintiffs' interests are fully aligned with those of absent class members because they bring the same claims for the same remedies under the same legal theories.  There is no antagonism between the Plaintiffs and the Class; all seek to increase the value of the Plan's holdings.

The second prong of the adequacy requirement is also met, as Interim Co-Lead Counsel have vigorously prosecuted this Action as described herein.  Interim Co-Lead Counsel have extensive experience in class actions on behalf of employees, and class actions based on alleged violations of ERISA.  Interim Co-Lead Counsel accordingly have sufficient knowledge about the applicable law of both class actions in general and ERISA cases in particular, and have devoted ample resources to the prosecution of the Action.  Accordingly, the adequacy requirement is satisfied.

### 2.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(1)

In addition to meeting the four prerequisites of Rule 23(a), the proposed class action must also be "maintainable" under one of the three categories found in Rule 23(b)(l), (2) or (3).  *See Peoples* v. *Wendover Funding*, 179 F .R.D. 492, 496 (D. Md. 1998).  Plaintiffs seek to certify the proposed Class under Rules 23(b)(1). The proposed Class is appropriate for certification under

#2064772v.1

Rules 23(b)(1). "Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)." *DiFelice* v. *U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). This is due to the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan. "'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.'" *Id.* (citations omitted).

## B.    The Proposed Settlement Should Be Preliminarily Approved

Under Rule 23(e), any proposed settlement or compromise in a class action lawsuit must be approved by the court and the class members must receive notice of the settlement that satisfies due process. Rule 23(e) does not define a specific procedure for court approval of class action settlements. Courts, however, generally follow a two step procedure. *Horton*, 855 F. Supp. at 827. The first step is currently before this Court, wherein "the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval,' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Id.* (citation omitted); *see also In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) ("The first step involves a preliminary determination of whether to give notice of the proposed settlement to members of the class and whether to schedule a hearing at which to receive evidence in support of and in opposition to the proposed settlement."). *See also Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under

13

Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.").

When deciding whether to approve a settlement, the relevant question the Court should consider is whether the proposed settlement is fair, adequate, and reasonable. *Mid-Atlantic Toyota*, 564 F. Supp. at 1383. Courts have reduced this analysis to evaluating the "fairness" and "adequacy" of the proposed settlement. *Id.* On the issue of "fairness," this Court has stated:

> The factors tending to reveal the fairness of a settlement are those which indicate the presence or absence of collusion among the parties. Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of insuring a fee, the court is obligated to ascertain that the settlement was reached as a result of good-faith bargaining at arm's length. The good faith of the parties is reflected in such factors as the posture of the case at the time settlement is proposed, the extent of discovery that has been conducted, the circumstances surrounding the negotiations and the experience of counsel.

*Id.* at 1383-84 (quoting *In re Montgomery County Real Estate Antirust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979); *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (same); *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) (same). The element of "adequacy" has been discussed as follows:

> In evaluating the 'adequacy' of a proposed settlement, the court must weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement . . .
>
> In assessing the adequacy of the proposed settlement, courts should weigh the amount tendered to the plaintiffs against such factors as (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Mid-Atlantic Toyota*, 564 F. Supp. at 1384 (quoting *In re Montgomery County Real Estate*, 83 F.R.D. at 315-16); *see also Jiffy Lube*, 927 F.2d at 159 (same); *see Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W.Va. 2002) (same).

14

Thus, in the context of a preliminary approval of a settlement, the Court should examine whether the Settlement is fair and adequate; that is, whether the Settlement is within the range of possible approval. *Horton*, 855 F. Supp. at 827. Furthermore, "[i]n assessing the fairness and adequacy of a proposed settlement, 'there is a strong initial presumption that the compromise is fair and reasonable.'" *South Carolina Nat'l Bank*, 139 F.R.D. at 339 (citations omitted). Settlements are compromises by their very nature, and they need not satisfy every single concern of the parties. *Id*. Plaintiffs respectfully submit that the proposed Settlement of this Action on behalf of the Class satisfies the requirements for preliminary approval.

### 1.    The Settlement Is Fair

The litigation and the settlement negotiations were hard fought by able counsel. As the Court is aware, the second mediation was conducted by Judge Connelly, after the first mediation before a private mediator of the Judicial Arbitration Mediation Services (JAMS) failed. Without compromising the confidentiality of the mediation and related Settlement negotiations, Plaintiffs submit that several issues, including the scope of the Class, amount of recoverable damages, and the viability of the Class's claims under ERISA, were vigorously contested during the litigation and extensively debated at both mediations.

Following an agreement-in-principle reached during the mediation before Chief Magistrate Judge Connelly, the Agreement was negotiated by the parties in good faith, at arm's-length and without collusion. As such, the Settlement is appropriate for preliminary approval, and the dissemination of notice to the Class is proper as well. *See Mid-Atlantic Toyota*, 564 F. Supp. at 1383-84.

### 2.      The Experience of Counsel is Demonstrated

Counsel for all parties have a substantial amount of ERISA class action experience, and thus satisfy Rule 23(g).  Plaintiffs' Interim Co-Lead Counsel are among the nation's leading class action litigation firms, with extensive experience in highly complex ERISA, securities and commercial litigation.  Plaintiffs' Interim Co-Lead Counsel, together and separately, have litigated numerous similar ERISA class action cases, and have recovered substantial amounts for plaintiff classes of plan participants and beneficiaries.  Counsel for Defendants in this Action, Morgan, Lewis & Bockius, LLP., is a global law firm with approximately twenty-five offices around the globe. The Court is familiar with the considerable efforts exerted by all counsel in this case on behalf of their respective clients.

For all these reasons, this Court may conclude that the proposed Settlement is fair, as it was reached in good faith and without collusion. Plaintiffs respectfully submit that the Settlement is in the best interests of the Class. *See, e.g., South Carolina Nat 'l Bank*, 139 F.R.D. at 339; *Henley*, 207 F. Supp. 2d at 493.

### 3.      The Settlement Is Adequate

The adequacy of the Settlement is well within the range of possible approval, especially when consideration is given to the fact that if the case was lost on the merits, the Class would recover nothing.  As such, the Class should be notified of the Settlement.

#### (a)      Reasons for the Settlement

Plaintiffs have entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of their claims, developed in the course of an extensive investigation by Plaintiffs' Interim Co-Lead Counsel during the investigation and prosecution of this Action.   Plaintiffs' Interim Co-Lead Counsel have obtained and reviewed relevant

16

documents, including the Plan's governing documents and materials, communications with Participants, internal Coventry documents regarding the Plan, SEC filings, press releases, public statements, news articles and other publications, and other documents concerning Plaintiffs' allegations that Coventry stock was an imprudent retirement investment.   In addition, investigation by Plaintiffs' Interim Co-Lead Counsel included, *inter alia*: (i) other independent factual research concerning Coventry's business operations; (ii) analysis of claims in the related securities case; (iii) research of the law applicable to the claims asserted in the Action and the potential defenses thereto; and (iv) consultation with forensic accounting and damages experts.

In addition to the foregoing, Plaintiffs' Interim Co-Lead Counsel, in assessing the merits of the proposed Settlement, considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors.  While certain of Plaintiffs' claims survived Defendants' motion to dismiss, Plaintiffs would still be required to prove that each Defendant was a fiduciary of the Plan with respect to the Plan investments in Coventry stock and, separately, that each Defendant breached his or her fiduciary duties under ERISA with respect to the Plan investments in Coventry stock, and that the breach caused losses to the Plan, Plaintiffs, and the proposed Settlement Class.  Moreover, Plaintiffs would also have to defeat Defendants' numerous defenses to liability, including: (1) that, as a matter of law, Coventry stock was not an "imprudent" plan investment; (2) that Defendants were not ERISA fiduciaries with respect to the Plan's investments in Coventry stock; (3) that Defendants did not breach their fiduciary duty to monitor their alleged appointees, or their fiduciary duty to disclose complete and accurate information to the Participants; and (4) that the alleged breach did not cause any damages to the Plan.  Even if Plaintiffs overcame these defenses, they would then also face the

17

challenge of calculating and proving damages, a process which is still relatively uncertain under the relevant ERISA jurisprudence.

As with any litigated case, Plaintiffs would face an uncertain outcome if the Action were to continue against the Defendants.  Continued litigation of the Action against Defendants could result in a judgment or verdict greater or lesser than the recovery under the Settlement Agreement, or in no recovery at all with a judgment or verdict in favor of the Defendants.

In sum, based upon their extensive investigation, analysis of the risks inherent in continued litigation, the further delay in litigating this case on the merits, the risks of establishing liability and damages and likely appeals regardless of which side prevailed at trial, Plaintiffs unequivocally favor preliminary approval of the proposed Settlement as it provides a certain benefit to the Class.  Accordingly, Plaintiffs have concluded, and respectfully submit to this Court, that the terms and conditions of the $3,600,000 Settlement are fair, reasonable and adequate and that the Settlement is in the best interest of the Class.

### (b)      Potential Difficulties of Proof or Strong Defenses

The fairness and adequacy of the Settlement is further underscored by taking into account the obstacles Plaintiffs faced in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.  *See In Re Jiffy Lube.*, 927 F.2d at 159; *see also Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999) (approving settlement where plaintiffs faced several significant, viable legal defenses "any one of which, if successful, could result in entry of a judgment *with prejudice* against the Class.") (emphasis in original).  Plaintiffs believe that they have a strong case on the merits; however, victory was far from assured.  As one court has noted, plaintiffs asserting ERISA imprudent investment claims face daunting challenges:

18

> Several district court decisions favor the possibility of establishing liability in cases alleging fiduciary breaches concerning holdings of risky company stock in individual retirement accounts; however, few of these cases reached the stage of a decision based on the merits. As a result, little authority supports the theories that are fundamental to Plaintiffs' claims. Moreover, if litigation were to continue, Plaintiffs would need to establish new law to overcome Defendants' defenses to liability . . . .

*In re Broadwing*, 252 F.R.D. 369, 372-73 (S.D. Ohio 2006). Furthermore, the Class would need to rely substantially upon the testimony of expert witnesses to prove their claims of accounting irregularities and damages. Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a "battle of the experts." *Id*. at 373. Plaintiffs here would face exactly the same obstacles to establishing liability and proving damages.

In addition to the risks of establishing liability and damages, the Court should balance the immediacy and certainty of a substantial recovery against the "the anticipated duration and expense of additional litigation." *In re Jiffy Lube*, 927 F.2d at 159. Although the parties have already engaged in extended litigation at considerable expense, in the absence of a Settlement, the members of the proposed Class would have to wait substantially longer before they obtain any relief, even assuming they are successful and overcome every obstacle. Fact discovery would continue, and would involve, at a minimum, numerous additional depositions, including depositions of experts. Dispositive motions—a given under the circumstances—would extend the schedule and a trial on these complicated issues would take weeks, creating a substantial burden for the parties and the Court. Finally, any verdict at trial would inevitably result in appeals. As summarized by the *Broadwing* court, "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to

the appellate process, provide justifications for this Court's approval of the proposed Settlement." 252 F.R.D. at 373-74 – or in this case justify preliminary approval.

In weighing the potential benefits of the Settlement against the risks and delays of continued litigation, the Court should give weight to the fact that Plaintiffs' Interim Co-Lead Counsel, who are fully familiar with the facts herein and have substantial expertise litigating precisely this type of ERISA class action, favor the Settlement and believe that it is in the best interests of the proposed Class.  Here, Counsel did not even commence Settlement discussions until after they had engaged in substantial motion practice, discovery and consultation with experts on the accounting and damages issues in the case.  Thus, Plaintiffs entered into the settlement discussions "fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases" and able to make "a well-informed decision to enter into the proposed Settlement agreement." *Broadwing*, 252 F.R.D. at 374-75; *see also In re Jiffy Lube*, 927 F.2d at 158-59, listing the following pertinent factors relating to the fairness of a proposed settlement:  (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation."  In these circumstances, the opinion of Plaintiffs' Interim Co-Lead Counsel is entitled to deference. *Id.*; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 151 n.7 (S.D. Ohio 1992).

### (c)  Anticipated Duration and Expense of Continued Litigation

There is no question that, were the litigation to proceed, completion of discovery, including expert discovery, and the eventual trial of this action would prove lengthy and would entail significant additional costs for all involved.  *See Mid-Atlantic Toyota*, 564 F. Supp. at

20

1386. In all likelihood, the action would have continued for several more years, resulting in substantial litigation expenses.

### C.   The Proposed Form Of Notice And Notice Plan Will Provide The Best Notice Practicable Under The Circumstances

Rule 23(c)(2) does not require that class members be notified by every means possible; rather, the Rule simply requires the "best notice practicable under the circumstances." *Peoples,* 179 F.R.D. at 502; *Fisher v. Virginia Elec. & Power Co.,* 217 F.R.D. 201, 227 (E.D. Va. 2003) ("if the class members cannot be identified and individually notified through reasonable effort, a court may exercise its discretion to provide the best notice practicable under the circumstances") (citing *In re Domestic Air Transport Antitrust Litig.,* 141 F.R.D. 534, 539 (N.D. Ga. 1992)); *In re U.S. Financial Sec. Litig.,* 69 F.R.D. 24, 47 (S.D. Cal. 1975) ("In this Court's view, notice by publication is the best practicable method of informing unknown debenture holders . . .").

This standard is more than satisfied here as all members of the Class are either current or past employees of Coventry and all were participants in the Plan.  Thus, Coventry and the Plan administrator possess the Settlement Class members' current physical addresses or at least very recent addresses.  In addition, the Agreement provides that a copy of the court-approved Notice shall be e-mailed to members of the Settlement Class for whom current e-mail addresses are readily available, and will be sent to members of the Class at the mailing addresses maintained by the Plan's recordkeeper.  The Agreement also provides that Plaintiffs shall cause the Notice to be published on a website identified in the Notice and which can be located through a regular internet search.  The reasonable costs of such Notice, including the cost of postage, shall be paid from the Settlement Fund.

**D.     The Proposed Plan of Allocation Is Reasonable And Should Be Given Preliminary Approval**

A trial court has broad discretion in approving a plan of allocation.  A plan of allocation need only have a "reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect." *In re The Mills Corp. Sec. Litig*, 265 F.R.D. 246, 258-59 (E.D. Va. 2009) (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126, 133 (S.D.N.Y.1997), *aff'd,* 117 F.3d 721 (2d Cir.1997)).  "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Id*.  The test is simply whether the proposed plan, like the settlement itself, is fair and reasonable. *See Walsh* v. *Great Atl. & Pac. Tea Co.*, *726* F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable.").  In determining whether a proposed plan is fair, courts give great weight to the opinion of qualified counsel. *See White* v. *NFL,* 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds).

Here, the proposed Plan of Allocation provides a recovery to the Class, net of administrative expenses, attorneys' fees and other expenses that the Court may choose to award, on a *pro rata* basis according to their recognized claims of damages.  No Class member or group of Class members is singled out for either disproportionately favorable or unfavorable treatment; all participate in the recovery pursuant to the Plan of Allocation in the same manner.

22

The two basic features of the agreed-upon Plan of Allocation are (1) that each Participant receives a share of the Net Proceeds based approximately on the decline in the value of the Coventry Stock Fund he or she held in a Plan account over the Class Period in comparison with the decline in value of the Coventry Stock Fund held by other Participants in their Plan accounts; and (2) that the distribution takes place through the Plan so as to realize the tax advantage of investment in the Plan.[4]

The proposed Plan of Allocation provides a simple, neutral and fair structure for allocation of the Net Settlement Proceeds among Class members' Plan accounts and prorates damages among Class members according to loss incurred, and is substantially the same plan of allocation approved and used in the vast majority of company stock fund ERISA cases. *In re Alger, Columbia, Janus, MFS, One Group, Allianz Dresdner and Putnam*, No. 04–MD–15863–05, 2010 WL 2104607 (D. Md. May 19, 2009); *see also In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *10 (S.D.N.Y. Sept. 27, 2006) (approving plan of allocation where class members all treated equally and their recovery calculated according to the decrease in value of their Plan holdings during the class period); *In re Worldcom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004) (same); *In re Worldcom, Inc. Erisa Litig.*, No. 02 Civ. 4816 (DLC), 2005 WL 2035496, at *1 (S.D.N.Y. Aug. 24,2005) (same); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (same).

---

[4]  A *de minimus* amount of $50 is proposed in order to limit the costs of administration in relation to the settlement benefits to be distributed. Specifically, in order to ensure that former participants receive settlement proceeds on a tax-free basis, Plan accounts may have to be created or reactivated. A *de minimus* amount ensures that these administration costs are not excessive in relation to the benefits received by Settlement Class Members.

23

The proposed Notice describes the proposed Plan of Allocation, is attached to the Agreement as Exhibit D, and will be posted on the dedicated settlement website. The Class should be given an opportunity to consider it.

### E.      It Is Appropriate To Schedule A Settlement Fairness Hearing

Under Rule 23 (e), a class action may not be settled, compromised or dismissed without the approval of the Court.  To that end, Plaintiffs respectfully request that the Court hold a Settlement Fairness Hearing, at which time the Order and Final Judgment (attached as Exhibit C to the Agreement) shall be entered, and the claims against Defendants shall be dismissed with prejudice.  At the Settlement Fairness Hearing, the Court will also rule upon matters outlined in the Agreement, including but not limited to: (i) whether the proposed Settlement is fair, reasonable and adequate, and should be approved by the Court; (ii) whether the Plan of Allocation is fair, reasonable and adequate, and should be approved by the Court; and (iii) whether Class Counsel's application for an award of attorneys' fees and reimbursement of expenses and a request for case contribution awards for the named Plaintiffs should be approved by the Court. As set forth in the Preliminary Approval Order, Plaintiffs respectfully request that the Court schedule the Settlement Fairness Hearing.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:  (i) grant preliminary approval of the Settlement and proposed Plan of Allocation; (ii) preliminarily certify the Settlement Class; (iii) approve the form and manner of Notice; and (iv) schedule a Settlement Fairness Hearing, all as set forth in the Preliminary Approval Order submitted herewith.

24

Dated:  October 3, 2013

GAINEY McKENNA & EGLESTON

/s/ Thomas J. McKenna
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone:  (212) 983-1300
Facsimile:  (212) 983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

HARWOOD FEFFER LLP
Robert I. Harwood
Tanya Korkhov
488 Madison Avenue
New York, NY 10022
Telephone:  (212) 935-7400
Facsimile:  (212) 753-3630
Email:  rharwood@hfesq.com
Email:  tkorkhov@hfesq.com

*Interim Co-Lead Counsel for Plaintiffs*

TYDINGS & ROSENBERG LLP

/s/ Toyja E. Kelley
Toyja E. Kelley, Fed. Bar No. 26949
John B. Isbister, Fed. Bar No. 00639
100 East Pratt Street
Baltimore MD 21202
Telephone:  (410) 752-9700
Facsimile:  (410) 727-5460
Email:  jisbister@tydingslaw.com
Email:  tkelley@tydingslaw.com

*Interim Liaison Counsel for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via electronic mail this 3rd

day of October, 2013.

Gregory C. Braden, Esq.
Christopher A. Weals, Esq.
Simon J. Torres, Esq.
Sean K. McMahan, Esq.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004

*Counsel for Defendants*

/s/ *Toyja E. Kelley*
Toyja E. Kelley

26

#2064772v.1